Dennis HOGE, Plaintiff and Appellee,

v.

Judy HOGE, Defendant and Appellant.

Civ. No. 9562.

Supreme Court of North Dakota.

April 30, 1979.

Rehearing Denied May 22, 1979.

558

Kapsner & Kapsner, Bismarck, for defendant and appellant; argued by Carol Ronning Kapsner, Bismarck.

Baer, Asbridge & Hager, Bismarck, for plaintiff and appellee; argued by Richard B. Baer, Bismarck.

PEDERSON, Justice.

Judy Hoge appeals from the district court's denial of a motion for a new trial. She alleges that the court abused its discretion by refusing to consider certain grounds which she raised for a new trial under Rule 59, North Dakota Rules of Civil Procedure. We reverse the district court's denial of the motion and remand for a new trial on issues relating to an equitable property division.

Dennis and Judy Hoge were married in 1960. At the time of their separation, the couple was residing on a farm north of Bismarck where they had lived with their three children for the major part of their marriage. The legal title to this farmland was held by Dennis jointly with his brother, James Hoge, except for a 30-acre tract which was held jointly by Dennis and the children. For purposes of the property division, the court considered Dennis to be the sole owner of the land held, apparently, in joint tenancy with the children. This 30-acre tract was the site of the family home. Dennis Hoge's primary occupation has always been farming and, while raising the children, Judy assisted her husband with the farm work. Since 1970, Judy has been employed in Bismarck on either a part-time or full-time basis.

Dennis initiated this action for divorce in November, 1975, in which he alleged irreconcilable differences and sought custody of the children. In response to Dennis's complaint, Judy answered and counterclaimed for divorce, and sought custody of the children. Although a hearing was held in August, 1976, judgment was not entered until May 2, 1978. The parties were granted a divorce on irreconcilable differences and the custody of their three children was awarded to Dennis. Title to all of the real and personal property owned by Dennis and Judy was awarded to Dennis. Judy was awarded a lump sum of $45,000.00, representing her share of the real and personal property owned by the parties.

In May, 1978, Ervin, one of the Hoges' children, began living with his mother in Bismarck. As a consequence of this de facto change in custody, an amended judgment and decree was entered on July 14, 1978, in which custody of Ervin was transferred to Judy, and Dennis was required to pay $50.00 per month as child support. The amount of child support was subsequently increased to $75.00 per month in an amended judgment and decree dated July 21, 1978. Apparently the Hoges' other two children are also now living with Judy. In oral argument before our court, it was disclosed that issues of custody and child support are currently being litigated in another action. We will not, therefore, address these matters.

On June 29, 1978, Judy moved for a new trial under Rule 59, NDRCivP, alleging, inter alia, that:

(1) There was newly discovered evidence concerning whether the property division was equitable;

(2) The evidence was insufficient to support the judgment because the property division was inherently inequitable and contrary to § 14–05–24, NDCC;

(3) There were certain irregularities in the testimony of Dennis.

In its amended judgment of July 21, 1978, the trial court denied Judy's motion on the ground that she did not present any "newly discovered" evidence. The court held that the evidence upon which she relied in seeking a new trial existed at the time of the original proceeding. The court further held that the property division contained in the original judgment was equitable and that the real estate acquired by the parties consisted of a gift to Dennis from his parents. For these reasons, the court concluded that Judy failed to substantiate and support her motion for a new trial.

Pursuant to Rule 59(f), NDRCivP, the trial court, when refusing to grant a new trial, is required to file a written memorandum concisely stating the different grounds on which its ruling is based. This provision does not require the trial judge to address the merits of each ground raised by the party seeking a new trial. To sufficiently comply with Rule 59(f), all that must be provided is a clear statement of the reasons for denying the motion.

The decision to grant or deny a new trial rests almost entirely with the discretion of the trial court. We have defined "abuse of discretion" *as an unreasonable, arbitrary, or unconscionable attitude on the part of the court.* Porter v. Porter, 274 N.W.2d 235, 243 (N.D.1979); Piper v. Piper, 239 N.W.2d 1, 3 (N.D.1976). The sole question here is whether the trial court displayed this attitude in denying Judy's request for a new trial.

Our standard of review on appeal from a denial of a motion for new trial is limited to a determination whether the trial court manifestly abused its discretion. *Porter v. Porter, supra.*

The trial court's findings reveal that it relied heavily on Dennis's representations that he wanted to continue farming both for his own benefit and for that of his children. In her motion, Judy asserted as a ground for new trial that she had discovered evidence to indicate that Dennis did not intend to keep the farm intact. Ordinarily, events occurring subsequent to trial are not grounds to justify a new trial under Rule 59(b), NDRCivP.

"The validity of a finding by the trial court, supported by substantial evidence on the record as to the future intentions of a party is not affected by a subsequent decision by that party to engage in conduct contrary to the finding." *Porter v. Porter,* 274 N.W.2d at 242, *supra.*

We hold that the trial court properly denied Judy's motion on the ground of newly discovered evidence.

Judy further alleged under Rule 59(b) that the evidence was insufficient to support an equitable property division and that the division was contrary to the mandate of § 14–05–24, NDCC. This section provides in part:

"When a divorce is granted, the court shall make such equitable distribution of

the real and personal property of the parties as may seem just and proper, . . . ."

Under this section, the court must consider *all* of the property accumulated by the parties, both jointly and individually owned. *Bellon v. Bellon*, 237 N.W.2d 163, 165 (N.D. 1976). The existence of evidence necessary to permit the court to make correct findings is the responsibility of counsel. *Nastrom v. Nastrom*, 262 N.W.2d 487, 492 (N.D.1978). Where sufficient evidence has been admitted from which the court can determine the net worth of the parties' real and personal property, and the court fails to do so, a manifest abuse of discretion exists. When there is evidence upon which the court can arrive at an equitable property division, justice requires use of the elementary accounting equation of assets minus liabilities equals total equity. From this equation it is possible to determine the net worth of the marital property. See *Nastrom v. Nastrom*, 262 N.W.2d at 491, supra.

After the court has determined the net worth of the parties, the guidelines enunciated by our court in *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966), come into play to aid the court in formulating its findings in relation to the facts and circumstances of a particular case. There is no requirement that a property division be equal in order to be equitable. *Grant v. Grant*, 226 N.W.2d 358, 363 (N.D.1975). On appeal, the findings of the court will not be set aside unless they are clearly erroneous. Rule 52(a), NDRCivP; *Keig v. Keig*, 270 N.W.2d 558, 560 (N.D.1978); *In re Estate of Elmer*, 210 N.W.2d 815 (N.D.1973).

In the original judgment of May 2, 1978, and the amended judgment of July 21, 1978, which was in effect an order denying a new trial, the court ignored assets acquired by the parties which have substantial value. Although there was sufficient evidence before the court from which to determine the value of the personal farm property, the findings reveal that the court based the property division solely on the value of the real property owned by the parties. Dennis's interest in the farmland was appraised at $312,250.00, a value reflecting its highest and best use as residential property. Subsequent to the original judgment, the land ownership was restructured and Dennis is now the sole owner of 340 acres of farmland. From Dennis's testimony and evidence presented in the form of gift tax returns, the court concluded that the real property was acquired by Dennis largely as a result of gifts from his father. The court found that substantial mortgages existed against this property but did not, in its findings, cite the specific amount of these encumbrances.

In addition to the real property held by Dennis and Judy, they accumulated substantial personal property for use on the farm and in the home. The record indicates that the farm personalty has a value after depreciation of $60,960.00. The findings do not show whether or not the court adopted this value as representing the true worth of the farm personalty or whether the court even considered its value when reaching a property division.

In 1977, Dennis and his brother, James, acquired Dakota Sanitation, Inc. This business was obtained while Dennis and Judy were living separate and apart, but were still married. Ordinarily, property acquired while living separately is accountable to satisfy obligations which arise out of the status of marriage. *Keig v. Keig, supra.*

The record discloses that, as of March 20, 1978, Dakota Sanitation, Inc., incurred the amount of $79,134.45 in liabilities. Dennis testified at trial that the total value of the trucks used in this business was approximately $65,000.00. Neither the value of the trucks nor the liabilities of Dakota Sanitation, Inc., were apparently considered by the trial court in its division of the property. Testimony of Dennis during the hearing on the motion for new trial disclosed that he disposed of his interest in Dakota Sanitation, Inc., shortly after the trial.

It is not ordinarily our function to provide a trial anew on the question whether there has been an equitable property settlement. In view of the fact that the trial court limited testimony at the

hearing on the motion to issues of newly discovered evidence and child support, we believe that it is proper, under the circumstances, to order a new trial for purposes of proper valuation and division of property. See *Orwick v. Orwick*, 153 N.W.2d 795, 800 (N.D.1967).

As an additional ground for a new trial, Judy asserts, pursuant to Rule 59(b)(1), NDRCivP, that there were irregularities in Dennis's testimony which prevented a fair determination of the issues relating to property division. Judy asserts, specifically, that Dennis had sole access to the family's financial records and that he was evasive and uncooperative in disclosing the value of the personal property accumulated during the marriage. She further alleges that Dennis blatantly contradicted himself in testimony concerning whether the real property was acquired by purchase or as a gift.

In testimony taken in a hearing before Judge Thompson on August 11, 1976, Dennis responded to questions posed by counsel as follows:

"Q. In whose name was it titled when it was purchased in 1956?

"A. My dad's and my uncle's.

"Q. Who made the payments on it?

"A. I and my brother.

"Q. Which brother?

"A. James.

"Q. You and James made all the payments?

"A. Yes.

"Q. When was the property deeded from your father and uncle into your name and James's name?

"A. That was in '65."

In later testimony taken before Judge Glaser on April 4, 1978, Dennis indicated that the land was a gift from his father:

"Q. Okay. Now, isn't it true that you and your brother paid your father quite a bit of money for the land involved that you are living on?

"A. Yeah, we paid him some.

"Q. Actually, you paid contract payments to him for a number of years, didn't you?

"A. Well, the gift taxes—what do you mean?

"Q. Well, did you pay him something for the land?

"A. No. He gifted us that land.

"Q. Did you make payments on the property before he gave it to you?

"A. No.

"Q. Did you pay off any mortgages that were on the property while it was owned by your father?

"A. No.

"Q. Did you pay off any gift taxes?

"A. Gift taxes, yes—or didn't—I can't remember."

Our review of the record indicates other instances of evasive or uncooperative testimony by Dennis relating to the amount and value of the personal property.

■ To justify a new trial on grounds of an irregularity in the proceedings of an adverse party, the irregularity must be one which is patent, obvious, or evident from the record. *Bohn v. Eichhorst*, 181 N.W.2d 771, 776 (N.D.1970). "Irregularity" in this context is defined as the nonconformance to a rule or a law, or failure to follow the requirement of the law. *Bohn v. Eichhorst*, 181 N.W.2d at 775, *supra*.

■ Although Dennis's testimony was inconsistent and evasive, Judy does not assert that he perjured himself before the court. Any difficulty or inconvenience suffered by Judy in eliciting testimony from Dennis is not alone a sufficient irregularity to warrant a new trial on this ground.

Finally, Dennis requests that this court dismiss this appeal because Judy has used, for her own personal benefit, $10,000 of the $45,000 awarded to her under the judgment. He relies upon our holding in *Grant v. Grant*, 226 N.W.2d 358 (N.D.1975), in arguing that Judy has accepted "substantial benefits" under the judgment and therefore has waived her right to appeal.

In *Grant* we quoted from *Montgomery v. Montgomery*, 88 N.W.2d 104 (N.D.1958), that:

" 'By the great weight of authority, it is held that where a decree of divorce awards alimony or property to one of the parties, and the latter accepts any payment of alimony or any part of the property under the decree, such party thereby waives the right of appeal or to a writ of error as to the divorce.' "

We denied the motion to dismiss the *Grant* appeal because it had not been shown that Mrs. Grant had made an "unconditional, voluntary, and conscious acceptance of substantial benefit under the judgment." We pointed out additional exceptions to the general rule in *Piper v. Piper,* 234 N.W.2d 621 (N.D.1975), and, in addition, we said:

> "It is both practical and just that if one jointly or individually possesses an asset during the pendency of a divorce action and is subsequently awarded that asset by the divorce judgment, he should not have to divest himself of that asset before appealing the judgment."

We applied a similar rationale in declining to dismiss the appeal in *Nastrom v. Nastrom,* 276 N.W.2d 130 (N.D.1979). Having found numerous exceptions to the general rule, we conclude that we should now reexamine that rule in its application to divorce actions. On several occasions we have cited as authority for the general rule 27A C.J.S. Divorce § 188. The writers of C.J.S. appear to recognize a caveat to the application of the general rule to divorce appeals which we failed to recognize in *Montgomery, supra* :

> "A party to a divorce decree who voluntarily accepts benefits which are awarded by the decree, and *which the party would not be entitled to but for the decree,* will be considered to have waived any right of judicial review of the decree." 27A C.J.S. Divorce § 188b, at 785. [Emphasis added.]

 The Annotation: Divorce Appeal—If Benefits Accepted, 29 A.L.R.3d 1184, § 13(a) and (b), at 1213, and following, points out that a party is not estopped from appealing by accepting alimony and property to which he or she was entitled as a matter of right. This requires an examina-

tion of the circumstances in each individual case, and the burden should be on the party who objects to the appeal to show this court that the benefit which was accepted would not be one that the party was entitled to without the decree. See our discussion of these matters in *Piper v. Piper, supra,* 234 N.W.2d at 623. We conclude that Dennis has not carried the burden of showing us that Judy has waived the right of appeal or review in this case.

 Judy requests costs and reasonable attorney fees for the preparation of her return to Dennis's motion to dismiss. Judy regards the motion as frivolous. Rule 38, North Dakota Rules of Appellate Procedure. We do not agree, as the motion to dismiss for allegedly accepting substantial benefits under the judgment is rarely a simple issue, but depends upon the circumstances of each case. Accordingly, we will not tax costs and attorney fees to either party at this time.

In summary, the record does not show that the marital assets were fully evaluated or considered by the trial court in formulating findings on the equitability of the property division. We remand for a new trial to determine the value of the personal property owned by the parties, for a redetermination of issues relating to an equitable property division, and for further consideration of costs and attorney fees.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.

### On Petition for Rehearing

PEDERSON, Justice.

It is stated that we have relied upon information that "is not properly before the appellate court" in reaching the conclusions that we have reached in this case. It is further stated that the "evidence which the Supreme Court has considered was completely and totally unavailable to the trial court and not considered therein." These are serious charges inferring misconduct which, if true, would unmistakably require this court to reconsider the entire case.

The "suspect" information or evidence appears to be "that portion of the testimony of Dennis Hoge relating to the acquisition of the parties' real property in the hearing of August 11, 1976, before Judge Thompson." The record confirms that, after taking the appeal, counsel for appellant served and filed a document designating certain items which would be included in the record on appeal, and therein specifically identified that partial transcript. No objection from the appellee appears in the record and the clerk of the district court certified that very same partial transcript to this court as a part of the record on appeal.

Appellant's brief and oral argument repeatedly refer to matters in that partial transcript. Neither appellee's brief nor his oral argument before this court raise any objection to the contents of the record or to appellant's argument. We said that it was not this court's function "to remake the record for review" in *Waletzko v. Herdegen,* 226 N.W.2d 648, 653 (N.D.1975). Although we may not "import absolute verity" to the clerk's certification of the record as we formerly did to the trial judge's certified statement of the case [see *Zarak v. Hjelle,* 154 N.W.2d 377, 379 (N.D.1967)], those who have objections must make "seasonable application, [so that] it may be . . . amended as to speak the truth." 4A C.J.S. Appeal & Error, § 1114, at 1144. That would have required appellee to move for remand for corrective action in the district court before, not after, presentation of the case to this court. In the absence of any objection whatsoever from one who has notice and ample opportunity to object, we must assume that the record is satisfactory.

It may very well be a significant factor in this case that the district *judge* who decided the case did not have all of the information that had been presented to the district *court,* some of which we did have. We acknowledge that the judge who heard a part of the testimony was replaced, after an election, by the judge who made the decision. Litigants should not be prejudiced in their lawsuits by a judge change.

Perhaps when all the information is produced and considered, no prejudice will be evident. The surest way to clear up the problem is to remand for a new trial on the appropriate issues.

The petition for rehearing is denied and the clerk of this court is directed to remand the case to the district court for further proceedings.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.