Kirsten Anine BRODERSEN,
Plaintiff and Appellee,

v.

Hans Christian BRODERSEN,
Defendant and Appellant.

Civ. No. 10889.

Supreme Court of North Dakota.

Sept. 4, 1985.

Rolfstad, Winkjer, McKennett, Kaiser & Stenehjem, Williston, for plaintiff and appellee; argued by Dean Winkjer, Williston. Appearance by Donna M. Murphy, Williston.

Bjella, Neff, Rathert, Wahl & Eiken, Williston, for defendant and appellant; argued by Dwight C. Eiken, Williston.

ERICKSTAD, Chief Justice.

Hans Brodersen appeals from a judgment of the District Court of Williams County. We affirm and remand for consideration of Kirsten's request for attorney's fees.

Hans and Kirsten Brodersen were married in Denmark in 1949. They immigrated to Canada, and eventually settled in the United States. Hans has worked for many years in oilfields around the country, and has recently served as a consultant on oilfield operations.

Difficulties arose in the marriage, and Kirsten filed for a divorce on May 25, 1983. The trial court awarded each party a divorce from the other, divided the marital property, and ordered Hans to pay $300.00 per month spousal support and $300.00 per month child support for the parties' minor son, Keith.

Hans has appealed, alleging that the trial court erred in admitting hearsay testimony into evidence, erred in allowing reappraisal of some of the couple's property, and erred in its division of property. Kirsten has filed motions to dismiss the appeal and for attorney's fees on appeal.

I

Kirsten filed a motion to dismiss Hans' appeal on the ground that Hans has accepted substantial benefits under the judgment for which he should be estopped from objecting to the judgment through an appeal. Kirsten asserts that Hans, by taking possession of the personal property and retaining payments on the real property awarded to him under the judgment, should be estopped from bringing this appeal. We disagree.

The general rule is that a party to a divorce action who accepts substantial benefits under the judgment thereby waives the right to appeal from the judgment. *Geier v. Geier*, 332 N.W.2d 261 (N.D.1983). However, before the waiver of the right to appeal can be found to exist there must be an unconditional, voluntary, and conscious acceptance of a substantial benefit under the judgment. *See Grant v. Grant*, 226 N.W.2d 358 (N.D.1975). The party moving to dismiss the appeal must clearly establish waiver of the right of appeal by the other party. *See Glass v. Glass*, 344 N.W.2d 677 (N.D.1984). The moving party has the burden to demonstrate that benefits accepted by the other party would not be ones to which that party would be entitled without the decree. *Hoge v. Hoge*, 281 N.W.2d 557 (N.D.1979).

We conclude that Kirsten has failed to clearly establish that Hans voluntarily accepted substantial benefits under the judgment so as to waive his right of appeal from the judgment. The items of personal property over which Hans has assumed control are relatively insubstantial in comparison to the total value of the marital property, and Kirsten has failed to establish that those items of property are ones to which Hans would not be entitled in the absence of the divorce decree. Also, Kir-

sten has failed to clearly establish that subsequent to the entry of the judgment Hans has transferred title to the parties' Arizona real property or has otherwise exercised control over that property inconsistent with the parties' prejudgment joint tenancy interest in that property. Accordingly, we conclude that Kirsten has failed to establish that Hans has voluntarily accepted substantial benefits under the judgment, and we therefore deny Kirsten's motion to dismiss Hans' appeal.

## II

Hans contends that the trial court erred in admitting into evidence the hearsay testimony of Kirsten's private investigator.[1]

The resolution of this issue requires a brief account of the factual situation leading up to Hans' sale of some of the marital property. After commencement of the action, the lower court entered an interim order which required Hans to pay temporary support to Kirsten and which also provided in part:

"The parties are hereby restrained and enjoined from disposing of or encumbering any of their property, real or personal, during the pendency of this case, or until further order of the Court, except as may be necessary in the usual and ordinary course and conduct of the business."

Kirsten brought a contempt proceeding against Hans for failure to make temporary support payments under the interim order. At the contempt hearing, Hans claimed that he had an insufficient cash flow to make those payments and to pay the couple's other debts. He requested that he be allowed to secure $25,000 from the sale or mortgage of their property to pay their debts. Although Hans asserts that the court gave him authority at that hearing to sell the couple's property, the transcript of that hearing reflects that he was authorized only to mortgage certain property to raise the money to pay their bills. After the hearing, the court entered an order finding Hans in contempt for failure to pay temporary support and including provisions for Hans to purge the contempt. However, the order did not specifically give Hans the authority to sell their property.

At a later pretrial hearing, counsel for Hans disclosed that Hans had sold four items of the couple's personal property, presumably to pay their debts. These items were sold to close friends of Hans for $16,900 less than Hans had previously valued the items.[2] Hans claimed that he used $5,712.71 of the proceeds from those sales to make necessary improvements to the couple's Arizona property.

Kirsten employed a private investigator to investigate the sale of property by Hans and the application of some of the proceeds for improvements to their Arizona property. At trial, the private investigator testified to the value of the property sold by Hans and the results of his investigation in Arizona. The private investigator's testimony was based upon appraisers' valuations of the property and correspondence and telephone conversations with individuals in Arizona. Hans contends that this testimony was hearsay and that the trial court erred in allowing it into evidence.

In *Schuh v. Allery*, 210 N.W.2d 96 (N.D. 1973), we stated that, in a nonjury case, a trial judge should ordinarily admit all evidence which is not clearly inadmissible because a trial judge who is competent to rule upon the admissibility of evidence can dis-

---

1. Hans also contends that Kirsten's counsel "testified" regarding the marketability of the Arizona property and that this was inadmissible hearsay. We have examined the record and find no indication that counsel testified under oath. Hans apparently refers to statements made by counsel during argument before the court. Arguments of counsel are not evidence, and we must assume that the trial court did not treat it as such in this case. Also, Hans has not demonstrated that counsel's statements were relied upon by the trial court in reaching its findings.

2. The items were a 3½-ton truck valued by Hans at $2,000 and which sold for $1,000; a houseboat valued by Hans at $8,000 and which sold for $3,000; a camper valued by Hans at $3,500 and which sold for $1,100; and a motor home valued by Hans at $18,500 and which sold for $10,000.

tinguish between admissible and inadmissible evidence when deliberating upon the ultimate decision. We cited, with approval, the following from *Builders Steel Co. v. Commissioner of Internal Revenue*, 179 F.2d 377, 379 (8th Cir.1950):

" 'In the trial of a nonjury case, it is virtually impossible for a trial judge to commit reversible error by receiving incompetent evidence, whether objected to or not. An appellate court will not reverse a judgment in a nonjury case because of the admission of incompetent evidence, unless all of the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made....' " *Schuh, supra,* 210 N.W.2d at 100.

■ We believe that the testimony of the private investigator based on the appraisers' valuations of the property sold by Hans was hearsay. However, we believe that there was competent admissible evidence in the record to justify the trial court's findings on the value of the four items. The trial court found that the value of those four items was the same value that Hans had placed on the items prior to the sale. *See* footnote 2. Hans also testified at trial to the selling price for each of those items. This admissible evidence supports the trial court's findings as to the value of the property and indicates that the property was sold for less than that value. The record further reflects that the interim order was still in effect and had not been modified to permit the sale of those items.

The trial court stated in its findings of fact that there was "alleged spending of money from the sale of property in North Dakota for the improvement of the Arizona property which could not be verified." Despite this statement, the trial court specifically found that Hans used the proceeds from the sales to "meet some current debts and make some improvements on the properties in Arizona." This finding of fact reflects that the trial court discounted the private investigator's testimony on verification of the Arizona expenditure.

Although we agree that a part of the private investigator's testimony was inadmissible hearsay, the trial court was fully capable of discounting any inadmissible evidence and relying on the admissible evidence. We believe there was sufficient admissible evidence to support the trial court's findings. Hans has not demonstrated that the testimony given by the private investigator induced the trial court to make an essential finding of fact which it would not otherwise have made. We conclude that the introduction into evidence of the private investigator's testimony was not grounds for reversal.

Hans also contends that the trial court erred in allowing a reappraisal of the couple's five trailers in Williston, North Dakota, which were awarded to Kirsten. The parties originally valued the five trailers at $42,519. The court granted a motion by Kirsten to reopen the record to take newly discovered evidence,[3] and Kirsten then attempted to introduce evidence that the value of the five mobile homes was considerably less than $42,519. Counsel for Hans objected to Kirsten's evidence, but agreed to have the trailers appraised by an independent appraiser. The record reflects that the attorneys agreed in open court that they would select an independent appraiser to appraise the five trailers for purposes of the property division. The independent appraiser valued the five trailers at $19,000.

■ The decision as to whether or not to allow a party to reopen a case or permit further evidence is within the sound discretion of the trial court. *Ward v. Shipp*, 340 N.W.2d 14 (N.D.1983); *Leno v. Ehli*, 339 N.W.2d 92 (N.D.1983). We do not believe the trial court abused its discretion in permitting the case to be reopened and in

**3.** The motion to reopen was made to introduce newly discovered evidence that Hans had received money for work done in 1983 and 1984 which contradicted Hans' testimony that he had not worked in 18 months.

permitting further evidence on the value of the five trailers.

## III

Hans contends that the trial court's findings of fact regarding division of property, spousal support, and child support are clearly erroneous. Our standard of review of such matters is well established:

"We have often said that the trial court's determination on matters of property division, alimony, and child support is to be treated as a finding of fact to be reviewed by this Court pursuant to Rule 52(a), N.D.R.Civ.P. ... A finding of fact will not be set aside on appeal unless clearly erroneous. A finding of fact is deemed clearly erroneous when we are left with a definite and firm conviction that a mistake has been made...." [Citations omitted.] *Jondahl v. Jondahl*, 344 N.W.2d 63, 67 (N.D.1984).

Hans' argument on this issue is premised upon his assertion that the trial court improperly reappraised the Williston trailers and valued the property which Hans sold to close friends at its appraised value rather than the amount received upon sale. Hans contends that, if the original valuations of the Williston trailers and the sale price of the personal property are used, Kirsten received property valued at nearly $124,-000, but he received property valued at only $50,000.

■ We conclude, however, that the trial court's findings regarding the value of the Williston trailers and personal items sold by Hans are not clearly erroneous. Therefore, Kirsten received property worth approximately $103,000 and Hans received property worth approximately $83,000.[4]

We have reviewed the record, and we are not left with a definite and firm conviction that the trial court made a mistake in its division of property or its award of spousal and child support.

## IV

Kirsten has filed a motion in this Court requesting that we award her attorney's fees on appeal. We have previously expressed our preference that the initial determination on awarding attorney's fees on appeal be made by the trial court:

"Although this Court and the trial court have concurrent jurisdiction to award attorney's fees on appeal, we believe that the trial court is in the better position to rule on a motion for attorney's fees on appeal." *Heller v. Heller*, 367 N.W.2d 179, 185 (N.D.1985).

*See also, Porter v. Porter*, 274 N.W.2d 235 (N.D.1979); *Keig v. Keig*, 270 N.W.2d 558 (N.D.1978). Accordingly, the judgment of the district court is affirmed and the case is remanded to the trial court for consideration of Kirsten's request for attorney's fees on appeal.

VANDE WALLE, GIERKE, MESCHKE and LEVINE, JJ., concur.

---

4. The items of property awarded to each party, and the values as found by the trial court, are as follows:

AWARDED TO KIRSTEN

| | |
|---|---|
| Family home in Williston | $ 75,000 |
| Five rental trailers in Williston | 19,000 |
| 1975 Pontiac Ventura automobile | 4,000 |
| 1981 Moped | 400 |
| Furniture and appliances | 5,000 |
| TOTAL | $103,400 |

AWARDED TO HANS

| | |
|---|---|
| Arizona investment property | $ 82,261 |
| -1982 Chevrolet truck | 8,000 |
| 1980 Moped | 150 |
| Houseboat | 8,000 |
| 1969 International truck | 2,000 |

AWARDED TO HANS

| | |
|---|---|
| Camper | $ 3,500 |
| Motorhome | 18,500 |
| Furniture and appliances | 1,000 |
| Tools | 1,000 |
| | $124,411 |

Less encumbrances assumed by Hans

| | |
|---|---|
| Family Home | 18,000 |
| Motorhome | 10,000 |
| Williston trailers | 13,500 |
| | 41,500 |
| | $41,500 |
| NET TOTAL | $82,911 |

In addition, the court ordered Hans to pay Kirsten's attorney's fees and private investigator's fees, totalling $9,182.64.