**August B. PANKOW, Jr., Plaintiff, Appellant and Cross-Appellee,**

v.

**Joan E. PANKOW, Defendant, Appellee and Cross-Appellant.**

**Civ. No. 10833.**

Supreme Court of North Dakota.

July 11, 1985.

---

Robert Vogel Law Office, Grand Forks, and Johnson, Johnson, Stokes, Sandberg and Kragness, Wahpeton, for plaintiff, appellant and cross-appellee; argued by Robert Vogel, Grand Forks.

Miller, Norman & Kenney, Moorhead, Minn., for defendant, appellee and cross-appellant; argued by Patrick B. Kenney, Moorhead, Minn.

ERICKSTAD, Chief Justice.

This is an appeal by August Pankow and a cross-appeal by Joan Pankow from the district court's second amended judgment filed October 30, 1984, subsequent to our remand of this case in *Pankow v. Pankow*, 347 N.W.2d 566 (N.D.1984) (*Pankow 1*). We reverse in part the court's second amended judgment and remand for more specific findings of fact.

August and Joan Pankow were granted a divorce on the ground of irreconcilable differences on February 7, 1983. The district court ordered August to pay child support of $150 per month until the youngest of the parties' two minor children reached the age of 18. The court awarded the parties' real estate, farm machinery, "grain on hand," and livestock to August. As her share of the property division, Joan was awarded monthly payments of $575 for the next 25 years. Joan appealed from the original judgment, alleging that the property division was inequitable and that the amount of child support was inadequate. In *Pankow 1*, we affirmed the district court's judgment with respect to the decree of divorce, and reversed that part of the judgment concerning the property distribution and child support. We stated in relevant part:

"In *Tuff v. Tuff*, 333 N.W.2d 421, 424 (N.D.1983), we held that periodic cash payments without interest awarded as part of a property distribution must be discounted in determining whether or not the distribution is equitable....

"While we take notice of the fact that $172,500 paid in 300 monthly payments has a present value far less than $172,500, we will not usurp the power of the trial court to find the facts. We therefore remand the case to the district court for a reexamination of the property distribution. On remand, the court is to determine the present value of the monthly payments awarded to Joan and to reassess the distribution in light of this value. The district court should also take into consideration the fact that, if historical trends continue, the value of the land will substantially increase over the 25-year period, whereas the buying power of Joan's $575 monthly installments will substantially decrease. It is likely that the current disparity between the values of the property awarded to August and Joan may grow even wider in the future, and the district court should consider this fact when it reviews the property division." 347 N.W.2d at 568–69.

We did not review the adequacy of the award of $150 per month in child support, stating that any changes made by the trial court in the property distribution may affect the adequacy of the child support. *Id.*

A hearing was held on July 6, 1984, at which time the district court heard additional testimony and arguments of counsel concerning the property distribution. A memorandum opinion was issued on August 30, 1984, from which amended findings of fact, conclusions of law, and order for judgment dated September 13, 1984, were drawn, and an amended judgment and decree entered on September 17, 1984. The district court's conclusions of law contain the following statement:

"Upon remand this Court feels there is no other way to divide the property, short of ordering that the property be

sold for the most part, to achieve an equitable distribution in line with the findings previously entered, and in line with the reassessment ordered by the Supreme Court."

The court ordered that most of the parties' machinery and equipment, livestock, grain, and farm real estate be sold and the proceeds divided. The proceeds from the sale of the machinery and equipment, excluding a 1975 vehicle which was awarded to August, are to be divided on a 55/45 percent basis with August accorded the larger share for his part in arranging the sale. All proceeds from the sale of livestock and grain, with the exception of five percent of the proceeds to be paid to August for the hauling and disposing of this property, are to be divided equally. The court awarded August the "residence" and approximately ten acres of land. All the remaining land was ordered "sold for cash, the debts paid and the proceeds divided."

The court ordered that all major farm liabilities to a maximum of $60,000 be deducted as necessary expenses from the sale of the land or machinery and livestock. Any additional debt exceeding $60,000 is to be deducted from August's share of the proceeds. August was ordered to pay child support of $150 per month in the manner previously ordered by the court in its original judgment.

Second amended findings of fact, conclusions of law, and order for judgment, and a second amended judgment and decree were filed on October 30, 1984, setting forth additional details concerning the sale of the property. The findings of fact contained in the district court's second amended findings of fact, conclusions of law, and order for judgment are the very same findings of facts set forth in the court's original findings of fact, conclusions of law, and order for judgment filed prior to our remand.[1]

1. The following are the district court's findings of fact which relate specifically to the parties' real and personal property:

"6. That the parties have accumulated considerable real and personal property during the course of their marriage. The real property is basically farm and ranch land including a homestead site with a house and out buildings. It contains approximately 320 acres and is located in Brightwood Township, Richland County, North Dakota, approximately one to two miles north of the City of Hankinson. This property was acquired by the parties on the 13th day of May, 1965, by a Quit Claim Deed from August Pankow and Ida Pankow, the mother and father of the plaintiff, in a combination gift/purchase transaction where the plaintiff agreed to assume the mortgage against said lands and other land. The property was basically soil bank, and the soil bank checks were turned over by the plaintiff to his parents as payment for or as a part of the transaction. This property has steadily increased in value over the years that the plaintiff and defendant have been married. The Court finds the fair market value of this property to be the sum of $277,000.00.

"7. That the personal property of the parties consists of the following: Miscellaneous household goods, supplies and utensils, which the parties have divided or agreed to divide between themselves, and the Court will approve the division they made accordingly, which, in any event, should be equal.

"8. The parties possess other personal property in the form of livestock, grain and machinery. This property has a fair market value of $126,890.50. This makes a total asset value of the parties of $403,890.50.

"9. That the parties have the following liabilities: Several unpaid bills and a mortgage on the farmland. This indebtedness totals approximately $60,000.00. When the liabilities are subtracted from the assets the net worth of the parties is $343,890.50."

In the district court's original conclusions of law it was determined that

"In order to maintain the children and provide for reasonable property settlement to the defendant, it is necessary, without forcing a sale of the property of the parties, to allow the plaintiff to continue the farming operation. To achieve this result, it is necessary that all of the farm machinery, grain on hand, livestock, and real estate be given to the plaintiff subject to ... payments which he must make to the defendant as and for her share of the property.

"... This will equitably divide the interest of the parties in their property; provide a suitable means of income for the defendant; and allow the plaintiff to continue the operation to meet these obligations and his obligation for child support."

In a memorandum opinion dated July 5, 1983, denying Joan's motion for a new trial, the district court emphasized the equitableness of its original property distribution:

"As has been pointed out in the authorities cited by the Plaintiff, a sale in every instance

August contends that the district court failed to comply with our mandate in *Pankow 1* by not determining the present value of the monthly payments awarded to Joan in the original judgment. In *Minnkota Power Cooperative, Inc. v. Lake Shure Properties*, 295 N.W.2d 122, 125 (N.D. 1980), we said:

"When the mandate of the appellate court makes clear the defects which need to be cured by the district court, the district court need do no more than rectify those defects and proceed in a manner consistent with the appellate opinion."

*See also Layman v. Braunschweigische Maschinenbauanstalt, Inc.*, 356 N.W.2d 102 (N.D.1984); *VanRosendale v. VanRosendale*, 342 N.W.2d 209 (N.D.1983).

The court's second amended findings of fact do not include a determination of the present value of the monthly payments originally awarded to Joan. However, our examination of the transcript of a teleconference had on October 12, 1984, between the parties' attorneys and the district court concerning August's motion for a stay of the amended judgment pending appeal, reveals the following oral comments expressed by the court:

"I did play with the values for quite a period of time determining what I felt, under the circumstances, Mr. Pankow could afford based on the productivity of the land at the figure that I set reducing it to what would appear to be a present value. And it became readily apparent to me, and I am sure it is readily apparent to Mr. Kenney and it might also become apparent to you, Ms. Vogel, that setting up the type of payment schedule beyond the amounts that I originally awarded would not leave Mr. Pankow in business. It just—oh, certainly, he would have had some equity in the land which he could borrow to make eventual payments, but it was a situation of diminishing returns. There was just no way that I could take the $172,000, convert it to present value and attach an interest payment to it and come up with a payment schedule that he could handle in— based on productivity of the land. . . . and so I toyed with that idea before I considered the redistribution of the property."

■ An oral recitation by the court from the bench which is fully recorded is entitled

of farm property owned by parties who get divorced is not required by North Dakota law. The rule is that the Court divide the property equitably under the circumstances. And under the circumstances of this case, the Court has divided the property equitably guaranteeing the Plaintiff his basic rights to continue to farm property which has been in his family for many, many years and to reap the benefits of the only occupation he knows while providing adequate protection and a livelihood to the Defendant for a substantial period of time, almost her lifetime, such that if she makes a reasonable effort to seek employment in those lines of work that she has customarily done, including some marketing and cooking and the like, she will have an adequate living basically for the rest of her life. Furthermore, she will receive an adequate share of the property as equitably as the Court is able to divide it without forcing a sale of the property or making the unit useless as a farming unit and depriving the Plaintiff of his livelihood.

\*   \*   \*   \*   \*   \*

"It is obvious from the income tax returns of the parties that the productive capability of the property is a great deal less than what the property values would produce if the property were sold and the proceeds of the sales invested in money market certificates or some other type of savings. This statement could be made about practically every piece of farm land in the State of North Dakota. However, it is not this Court's position nor does the Court choose to adopt the position in this case that every divorce case that comes to Court involving farm land, that the farm land has to be sold and the proceeds divided between the parties for investment purposes. This court is entitled to consider the earning abilities of the parties, their respective stations in life, what they are used to with respect to their livelihood, what expectations they would ordinarily have out of their life, and all of the other factors that have been expressed in many cases dealing with the division of property (Ruff-Fisher guideline) and determine as equitably as possible under those circumstances what is an appropriate, fair, and just decision in terms of the division of property. This the Court has done, and the Court will not amend the Findings to achieve some result or force the sale of the property to achieve a result which does not treat both parties equitably under the guidelines as set forth above."

to consideration on appeal, under Rule 52(a), N.D.R.Civ.P., to the extent that it contains findings of fact or conclusions of law by the court. *Schneider v. S.L.M.*, 347 N.W.2d 126, 130 (N.D.1984); *Klitzke v. Klitzke,* 308 N.W.2d 385, 388 (N.D.1981); *Williams v. Williams,* 302 N.W.2d 754, 759 (N.D.1981); *Hust v. Hust,* 295 N.W.2d 316, 321 n. 3 (N.D.1980). We cannot ascertain from the teleconference transcript what present value the court concluded the monthly installment payments had. It is possible, however, that the court may have concluded that the present value, whatever it was determined to be, would not constitute an equitable division of property and that the property could not support a more generous installment program.

As the court made no specific findings on this issue and the transcript is not very revealing, we must reluctantly again remand this case for more specific findings, which it appears will require an additional evidentiary hearing. In so remanding, we are not saying that a sale of the property and distribution of the proceeds is or is not required, but that we cannot discern from the findings of fact or the record before us whether or not the property distribution is clearly erroneous.

August contends that the district court committed reversible error when it failed to specify the findings of fact on which it based its conclusion of law that "there is no other way to divide the property short of ordering that the property be sold for the most part." As we have already indicated, the findings of fact in the court's second amended judgment are identical to those contained in the original judgment in which the court expressed the view that the farm property did not have to be sold in order to effectuate an equitable property distribution. The court specifically found that August "is a farmer by occupation. This is the only trade that he knows and he has had no training in any other economic endeavor."

■ A trial court should "find the facts specially" in order to enable this Court to understand the basis of the trial court's conclusions of law. *E.g., Graves v. Graves,* 340 N.W.2d 903, 906 (N.D.1983). Our holding in *Pankow 1* was not intended to carry with it the implication that, as a matter of law, the farming operation had to be liquidated in order to achieve an equitable property distribution. *See Graves v. Graves,* 340 N.W.2d at 907 n. 3; *Urlaub v. Urlaub,* 325 N.W.2d 234, 238 n. 2 (N.D. 1982); *Williams v. Williams,* 302 N.W.2d at 760, n. 3. In *Urlaub v. Urlaub,* 325 N.W.2d at 238, n. 2, we agreed with the rationale expressed in *Koubek v. Koubek,* 212 Neb. 2, 321 N.W.2d 55 (1982), that courts should avoid a property distribution which will destroy or damage the ability of one of the parties to earn a livelihood or which will destroy the value of the property.

■ Although the facts and circumstances of a particular case may warrant the liquidation of a substantial part of the marital property in order to effectuate a just and proper distribution, we conclude that, upon a full review of the findings in light of the record and transcripts, we are unable to ascertain the basis for the district court's decision to do so in this case. When we do not have a clear understanding of the basis of the trial court's decision, the findings are not adequate to enable us to determine whether or not a mistake has been made. *Tuff v. Tuff,* 333 N.W.2d 421, 424 (N.D.1983). When neither the findings nor the transcripts of the proceedings disclose the basis for the court's conclusions of law and the decision, we cannot properly perform our appellate court function.

The "findings" which appear in the transcript of the district court's oral recitation of October 12, 1984, reveal that the court apparently considered the productivity of the land and the possibility of other financing, in addition to the present value of the monthly payments originally awarded to Joan, in determining that an award of monthly payments to Joan as part of the property distribution would not be feasible. The underlying facts apparently relied upon by the district court in making this determination, *i.e.,* the present value of the

monthly payments, the availability and cost of additional financing, and the productivity of the land, are not set forth in the court's findings of fact.

Joan argues that the district court's basis for redistributing the property is discernible from the record by deduction or inference in that the parties' income tax returns for the years 1979 through 1981 show a minimum return on investment. *See Lentz v. Lentz,* 353 N.W.2d 742, 745 (N.D.1984). However, in light of our expressed preference that courts should avoid a property distribution which will destroy or damage the ability of one of the parties to earn a livelihood, and the district court's finding that farming is the only trade August knows, we will not usurp the power of the trial court to find the facts. Therefore, we must remand for a more specific indication of the factual basis for the district court's conclusion that "there is no other way to divide the property, short of ordering that the property be sold."

Joan contends in her cross-appeal that the district court's award to August of "the homestead and all the farm buildings free from any claim by her and free from all debt is clearly erroneous." In view of our disposition of this matter, however, any further discussion of the equitableness of the property distribution would be both premature and most difficult in the absence of more specific findings of fact indicating the basis for the court's property distribution.

Accordingly, we reverse that part of the district court's second amended judgment regarding property distribution and remand the case for further proceedings consistent with this opinion. Costs on appeal are not awarded to either party.

GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

LEVINE, Justice concurring specially.

While I concur in both the rationale and result of the majority opinion, I write specially to express my disagreement with that portion of Pankow 1 which directed the trial court to consider:

"the fact that, if historical trends continue, the value of the [farm] land will substantially increase over the 25-year period, whereas the buying power of Joan's $575 monthly installments will substantially decrease. It is likely that the current disparity between the values of the property awarded to August and Joan may grow even wider in the future, and the district court should consider this fact when it reviews the property division." *Pankow v. Pankow,* 347 N.W.2d 566 at 569 (N.D.1984).

I believe that the historical trend of farmland's steadily appreciating value had undergone a startling metamorphosis at the time the opinion was written and that if a new trend were even yet discernible it was not one justifying the conclusion that the land would steadily appreciate. The future value of the land is, to say the least, unpredictable, given present economic conditions. Without expert testimony, prognostication of future land values based on present conditions, is sheer speculation and is not an exercise we should foist upon a trial court burdened with the responsibility of making a presently equitable division of property.

Obviously, the trial court took heed of the faulty instruction. In my view, because it is erroneous and misleading, it should be disavowed.

MESCHKE, J., concurs.